IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**DIANE GROTH,**

    Plaintiff

v.      CIVIL NO. JKB-16-2569

**ADMIRAL MICHAEL ROGERS,**
Director, National Security Agency,
    Defendant

## MEMORANDUM

Plaintiff, a security engineer formerly employed by the National Security Agency ("NSA"), filed this pro se complaint against her former employer alleging that it created a hostile work environment on the basis of her age and gender. (Compl., ECF No. 1.) The NSA[1] has moved to dismiss or, in the alternative, moved for summary judgment. (ECF No. 14.) That motion has been fully briefed (ECF Nos. 16, 17), and is now ripe. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the NSA's motion to dismiss will be denied in part and denied in part without prejudice, and the alternative motion for summary judgment will be denied without prejudice. The case will be stayed awaiting the termination of the appeal currently pending before the EEOC.

## I. STANDARD FOR DECISION

### A. *Standard for Dismissal for Lack of Subject Matter Jurisdiction*

When, on a Rule 12(b)(1) motion to dismiss, a party challenges the factual basis for the district court's subject matter jurisdiction, the burden is on the plaintiff to prove the court has

---

[1] Plaintiff has named Admiral Michael Rogers as the Defendant, as she is required to do in a suit brought pursuant to Title VII. *See* 42 U.S.C. § 2000e-16(c) (2017). Because "official capacity" suits are treated as suits against the government agency, *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985), the Court will refer to the defendant as the NSA.

jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). On consideration of such a motion, the court is to regard the allegations stated in the pleadings as evidence and may consider evidence from outside of the pleadings without converting the motion into one for summary judgment. *Id.*

### B. Standard for Dismissal for Failure to State a Claim

In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555. On a motion to dismiss, a court may consider documents that are explicitly incorporated into a complaint by reference and those that are attached to the complaint as exhibits. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). A court may also consider those documents

submitted by the movant that are integral to the complaint and about which there is no debate concerning authenticity. *Id.*

## II. BACKGROUND[2]

Plaintiff was employed by the NSA as a "GG 15" information systems security engineer from March of 2008 until February of 2012. (Compl. 7–8.)[3] During her employment, she alleges that she endured the following discriminatory actions by her employer as a result of her sex:

1. She was assigned a work location where the engineers belonged to various minority groups and where she was distant from her supervisors;

2. She was not invited to certain meetings attended by her male colleagues;

3. She was not permitted to have certain engineering books on her desk, while her male colleagues were;

4. She was denied access to computer software needed to complete her assigned work, while her male colleagues were provided such software;

5. She was denied support staff that was provided to her male colleagues;

6. Her supervisors declined to assign her to work on unspecified projects, despite others requesting that she be so assigned;

7. She was not given a mentoring role over junior engineers;

8. Supervisors chastised her when customers praised her work;

---

[2] Because this memorandum evaluates a Rule 12 motion to dismiss, the Court here summarizes the allegations as presented by Plaintiff in the Complaint. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Where indicated, the Court supplements these allegations with evidence from outside the pleadings, as is permitted when assessing a factual challenge to jurisdiction under Rule 12(b)(1). *Richmond, Fredericksburg & Potomac R.R. Co*, 945 F.2d 765, 768 (4th Cir. 1991).

[3] The Complaint's cover sheet (ECF No. 1-1) is hand-marked as page number one and the Complaint itself (ECF No. 1) begins with page number two. The Court will refer to the pagination according to Plaintiff's hand-marked numeration.

9. She was assigned to draft what she deemed to be an illegal contract and, in retaliation for her refusal to do so, was denied professional opportunities and was given a low performance rating;

10. She was denied permission to participate in a graduate fellowship program that was available to her male colleagues;

11. She was removed from the NSA's Women's Employee Resource Group;

12. After an office move, her work location was relocated among government contractors, while her male colleagues were seated among government employees;

13. Her supervisor interrupted her when she gave presentations during conferences;

14. At engineering conferences, she was told not to sit in certain seats, which were reserved for her male colleagues;

15. She was paid less than her male colleagues despite having more advanced academic credentials than they did;

16. She was assigned to take notes at certain meetings;

17. Despite requests from the White House and the Defense Information Systems Agency that she work on specific programs, her supervisors refused to give her such assignments;

18. Her supervisors inaccurately characterized her as a "poor performer"; and

19. Her employment was wrongly terminated on February 12, 2012.

(Compl. 8, 10–14.)

Plaintiff initiated an informal investigation into some of the enumerated allegations with the NSA's Equal Employment Opportunity and Diversity Office on July 6, 2009, and followed it

with a formal complaint on October 27, 2009. (Acceptance of Compl. in 10-006, ECF No. 17-4.) This charge was given the denomination "Agency Action 10-006" and was adjudicated on the merits by an administrative judge who found no evidence that Plaintiff was subjected to harassment by the NSA. (Decision in 10-006, ECF No. 14-8.) On September 21, 2012, the NSA formally adopted and implemented the findings of that administrative judge and issued a final order to that effect. (Final Order in 10-006, ECF No. 14-7.) Plaintiff appealed to the EEOC, which, on March 20, 2014, upheld the NSA's decision. (Decision on Appeal in 10-006, ECF No. 14-9.) On April 8, 2016, the EEOC denied Plaintiff's request for reconsideration and informed Plaintiff of her right to commence a civil action against the NSA. (Reconsideration Decision in 10-006, ECF No. 1-2.) Plaintiff received notice of that denial on April 14, 2016. (Compl. 19.)

Meanwhile, from October 4, 2010, to January 14, 2012, Plaintiff filed at least six additional formal charges or additions to pending charges with the NSA's Equal Employment Opportunity and Diversity Office. (Acceptance of Compls. 11-011, 11-029, 12-004, ECF Nos. 17-5–17-7.) The NSA consolidated these charges for review in Agency Actions 11-011 and 12-004. (Final Order in 11-011 and 12-004, ECF No. 14-5.) From September 16 to 18, 2014, another administrative judge heard evidence on those charges and, on December 1, 2016, issued a judgment finding no evidence of harassment, discrimination, or retaliation.[4] (*Id.* at 3.) On January 6, 2017, the NSA adopted and implemented these findings. (*Id.*) On January 13, 2017, Plaintiff filed an appeal with the EEOC for the NSA's decision in Agency Actions 11-011 and 12-004. (Acknowledgement of Appeal in 11-011 and 12-004, ECF No. 17-3.) As of this writing, the Court has not been informed that the EEOC appeal in Agency Actions 11-011 and 12-004 has been resolved.

---

[4] This decision was issued after the commencement of the instant suit on July 13, 2016.

## III. ANALYSIS

The NSA bases its motion to dismiss on Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. It challenges the Court's jurisdiction to hear allegations that *do not* reasonably follow from Administrative Action 10-006 (Def.'s Mem. in Supp. 28–32, ECF No. 14-2), and it moves to dismiss those allegations that *do* follow from Administrative Action 10-006 as untimely (*id.* at 18–21). Alternatively, the NSA moves to dismiss based on Plaintiff's alleged failure to state a prima facie case or for summary judgment based on her failure to rebut the NSA's non-discriminatory explanations for its actions. (*Id.* at 21–28.)

The Court finds the Complaint to cover allegations arising from three different administrative actions, some of which themselves consolidate multiple charges. When Plaintiff filed the Complaint, she had exhausted her administrative remedies with respect to all allegations arising from Agency Actions 10-006, 11-011, and 12-004. Accordingly, the Court finds that it has jurisdiction to hear all such claims, and the NSA's motion to dismiss for lack of subject matter jurisdiction will be denied. Because the record indicates the Complaint was timely with respect to allegations arising from the aforementioned actions, the Court will also deny the motion to dismiss the Complaint as untimely. The NSA's alternative arguments will be denied without prejudice.

### A. *The Court's Jurisdiction Over the Alleged Conduct Underlying the Complaint*

The Complaint raises claims of discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII")[5] and the Age Discrimination in Employment Act of 1967 (the "ADEA"). (Compl. Cover Sheet, ECF No. 1-1.) Title VII prohibits discrimination or

---

[5] The Complaint cites Title VIII rather than Title VII of the Civil Rights Act of 1964. Title VIII deals with voter registration and the collection of voter data, which have no application to the facts of this case. *See* 42 U.S.C. § 2000f (2017). Because the Court construes *pro se* filings liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), it will respond as if Plaintiff had brought her complaint under the proper statute, that is, Title VII.

harassment in employment (including employment by the Federal Government) on the basis of race, color, national origin, sex, or religion. 42 U.S.C. § 2000e-16 (2017). The ADEA prohibits discrimination on the basis of age. 29 U.S.C. § 633a (2017). Under both statutes, an employee wishing to initiate a civil suit alleging discrimination must first exhaust her administrative remedies, and failure to exhaust such remedies deprives the federal courts of subject matter jurisdiction to hear the claim. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300–01 (4th Cir. 2009).

### 1. The Scope of the Suit

Under both Title VII and the ADEA, the scope of the civil suit brought is confined by "the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (defining the proper scope of a suit brought under Title VII); *Byington v. NBRS Fin. Bank*, 903 F. Supp. 2d 342, 350 (D. Md. 2012) (applying the same rule to an ADEA suit). However, "the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992); *see also Bonds v. Leavitt*, 629 F.3d 369, 379 (4th Cir. 2011) "[B]ecause administrative charges are not typically completed by lawyers, they must be construed liberally." *Id.*

The Complaint indicates that it is based on the EEOC's denial of reconsideration in Agency Action 10-006 (Compl. 7), and that is the only administrative charge referenced in the documents attached to the Complaint. At the same time, the Complaint alleges misconduct that was not advanced in Agency Action 10-006. For example, it alleges that Plaintiff's termination was discriminatory despite the fact that she was terminated more than two years after Agency Action 10-006 was filed. (*See* Compl. 14; Acceptance of Compl. in 10-006.) However, the Court is aware that Plaintiff initiated several other administrative charges, which were

7

consolidated into Agency Actions 11-011 and 12-004. (*See* Acceptances of Compls. in 11-011, 11-029, and 12-004.) On a Rule 12(b)(1) motion to dismiss, a district court may take judicial notice of the existence and contents of EEOC proceedings if doing so is necessary to decide issues such as exhaustion of administrative remedies. *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 787 (D. Md. 2013) (citing *Bonds*, 629 F.3d at 378–80). Taking this rule along with the principle that pro se pleadings ought to be construed liberally, *see Pardus*, 551 U.S. at 94, the Court will interpret the Complaint as being based on Agency Actions 10-006, 11-011, and 12-004, and will define its scope accordingly.

The Complaint is not always precise in the details of the conduct alleged, and even the administrative documents are at times ambiguous as a result of redactions of references to particular NSA projects. While some instances of allegedly illegal conduct clearly form part of both Plaintiff's formal administrative charges and her civil complaint (*e.g.*, her being denied participation in the graduate fellowship program, her removal from the Women's Resource Group, and her termination), other specific allegations in the instant case do not have obvious counterparts in the administrative actions. Nevertheless, the conduct alleged in the Complaint appears to fall within the overall scope of the investigation that could be expected to follow from Agency Actions 10-006, 11-011, and 12-004. Both the civil complaint and the administrative actions allege harassment and discrimination on the bases of sex (and, to some extent, age), and the alleged mechanisms of the illegal conduct fall within the categories of poor performance evaluations, denial of professional opportunities, unequal pay, and eventual termination. At this point in the litigation, the Court cannot identify any allegations from the Complaint that clearly lie beyond the scope of the investigations that could reasonably be expected to follow from Plaintiff's administrative charges of discrimination.

## 2. Exhaustion of Administrative Remedies

To exhaust her administrative remedies, a federal employee bringing a civil action under Title VII must first file an informal complaint with the employing agency's designated equal opportunity office, and, if no resolution is forthcoming, must follow up with a formal complaint, review of which may be conducted by an administrative judge. *Blount v. Shalala*, 32 F. Supp. 2d 339, 341 (D. Md.), *aff'd*, 199 F.3d 1326 (4th Cir. 1999); 29 C.F.R. §§ 1614.105–1614.109 (2012). To exhaust one's administrative remedies, one must also reasonably cooperate with the administrative investigation. *See Woodard v. Lehman*, 717 F.2d 909, 914 (4th Cir. 1983). After an agency takes a final action pursuant to the administrative judge's decision, the employee may file an appeal with the EEOC, but this step is not mandatory to achieve exhaustion of her administrative remedies. *Laber v. Harvey*, 438 F.3d 404, 416 n.9 (4th Cir. 2006) (citing 29 C.F.R. § 1614.407). Filing a civil action terminates a pending EEOC appeal.[6] 29 C.F.R. § 1614.409 (2012). A federal employee who follows the same procedures with respect to an action under the ADEA will also achieve administrative exhaustion. *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5 (1991); 29 C.F.R. §§ 1614.105–1614.109 (2012).[7]

In Agency Action 10-006, Plaintiff submitted informal and formal complaints to the NSA (Acceptance of Compl. in 10-006), participated in a hearing before an administrative judge (Decision in 10-006), appealed the NSA's final determination to the EEOC (Decision on Appeal in 10-006), and requested that the EEOC reconsider its decision (Reconsideration Decision in 10-006), all before filing suit in the instant case. (*See* Compl.) She thus not only exhausted her administrative remedies, but pursued additional administrative steps that were not prerequisites

---

[6] The cited regulation indicates that if a civil suit is filed while an appeal is pending, the parties are *requested* to notify the EEOC. It does not indicate a procedure for when, as in this case, an employee appeals to the EEOC while a civil suit is pending.

[7] Under the ADEA's "bypass provision," not relevant here, a federal employee has the alternative of proceeding directly to court after giving the EEOC thirty days' notice of her intent to sue. 29 U.S.C. § 633a(d) (2017); *Stevens*, 500 U.S. at 6.

to filing suit. In Agency Actions 11-011 and 12-004, Plaintiff submitted informal and formal complaints to the NSA from October 4, 2010, through February 6, 2012 (Acceptance of Compls. 11-011, 11-029, 12-004), and she participated in a hearing before an administrative judge from September 16–18, 2014 (Final Order in 11-011 and 12-004). Therefore, with respect to these actions, too, she exhausted her administrative remedies before filing the instant suit on July 13, 2016. (*See* Compl.) The fact that she later filed an appeal to the EEOC regarding the NSA's final decision in Agency Actions 11-011 and 12-004 does not mean that her administrative procedure became less than exhausted. Rather, if anything, the pertinent regulation implies that her EEOC appeal should have been terminated at its inception. *See* 29 C.F.R. § 1614.409 (2012) ("Filing a civil action under § 1614.407 . . . shall terminate Commission processing of the appeal.").

The Court concludes that Plaintiff has fulfilled the requirements of administrative exhaustion for all allegations reasonably following from Agency Actions 10-006, 11-011, and 12-004 and that the case falls within the Court's subject matter jurisdiction. Accordingly, the NSA's motion to dismiss for lack of subject matter jurisdiction will be denied.

### B. *Timeliness of the Complaint*

In addition to challenging the Court's jurisdiction to hear the instant case, the NSA also argues that due to the untimeliness of the Complaint, Plaintiff has failed to state a claim on which relief may be granted. (NSA's Mem. in Supp. 18–21, ECF No. 14-3). However, based on the dates alleged in the Complaint and other documents on the record, the Court concludes that Plaintiff's Complaint was timely filed with respect to all allegations arising from Agency Actions 10-006, 11-011, and 12-004. Accordingly, the NSA's motion to dismiss for untimeliness will be denied.

Under Title VII or the ADEA, an employee may bring suit against a federal employer after receiving notice of a final action by the agency/employer or of a final decision on appeal by the EEOC. *Laber*, 438 F.3d at 416; *Stevens*, 500 U.S. at 5. Under either statute, once the agency/employer reaches a final decision (or once the EEOC reaches its final decision on appeal), the employee wishing to file a civil suit may only do so within the first 90 days of receiving notice of the final action. 42 U.S.C. § 2000e-16(c) (2017); *Rawlett v. Runyon*, 104 F.3d 359 (4th Cir. 1996) (applying the Title VII limitations period to ADEA claims). The Supreme Court has held that the requirements for timely filing in the Title VII context ought to be strictly construed. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108 (2002). Courts have used procedural rules in calculating dates pertinent to the timely filing of civil complaints subsequent to notices of final action. *Nguyen v. Inova Alexandria Hosp.*, 187 F.3d 630, 1999 WL 556446 at *3 (4th Cir. 1999) (unpublished). Thus, when the record contains no evidence of the actual date of receipt of a letter, courts apply Rule 6 of the Federal Rules of Civil Procedure and presume notice to have been received three days after it was mailed. *Id.* However, where the record contains evidence of the actual date of receipt, that evidence will control. *Id.* If the agency/employer issues no final action within 180 days after an employee files her formal charge of discrimination (or if the EEOC reaches no final decision within 180 days after the employee files an appeal), then the employee may proceed to file suit. 42 U.S.C. § 2000e-16(c) (2017); 29 C.F.R. § 1614.407(b), (d). In such a circumstance, the employee's right to file suit remains in place until 90 days after receiving notice of the eventual agency action.

The EEOC issued its final decision on reconsideration of Plaintiff's appeal in Agency Action 10-006, on April 8, 2016. (Reconsideration Decision in 10-006.) The EEOC mailed a copy of that decision the same day. (*Id.*) If the Complaint were silent as to the actual date

11

Plaintiff received that notice, the Court would presume Plaintiff received it on April 11, 2016, three days after it was sent. However, the Complaint is not silent. In it, Plaintiff alleges that she received the EEOC's letter on April 14, 2016 (Compl. 19),[8] and the attached copy of the EEOC's decision includes a handwritten marginal annotation reading "received April 14, 2016" (Reconsideration Decision in 10-006 at 2). Accepting the pleadings' factual allegations as true, the Court finds Plaintiff to have sufficiently alleged that she received notice of the NSA's final decision in Agency Action 10-006 on April 14, 2016. This suit was filed on July 13, 2016 (Compl.), which was ninety days after April 14, 2016. Thus, with respect to actions arising from the conduct alleged in Agency Action 10-006, the Complaint was timely. The NSA's motion to dismiss will be denied with respect to such allegations.

When Plaintiff filed the instant suit on July 13, 2016, her administrative charges in Agency Actions 11-011 and 12-004 were more than 180 days old, and the NSA had not yet communicated a final agency action containing notice of Plaintiff's "right to sue." (*See* Final Order in 11-011 and 12-004 (demonstrating that the NSA's notice was sent on January 6, 2017).) Accordingly, the Complaint was also timely with respect to any allegations that could be expected to follow from Agency Actions 11-011 or 12-004.

After filing her civil suit, Plaintiff continued to pursue her administrative remedies in Agency Actions 11-011 and 12-004 by filing an appeal with the EEOC. (Acknowledgment of Appeal in 11-011 and 12-004.) The NSA suggests that doing so means the instant case was premature insofar as it includes allegations contained in those charges. (Def.'s Reply 9–11, ECF

---

[8] Plaintiff alleges the date of receipt in an incomplete sentence within the conclusion of the Complaint. (Compl. 19 ("U.S. EEO Washington, DC, decision received on April 14, 2016 (attached).")). While this description is awkwardly alleged, Plaintiff's meaning is sufficiently clear, particularly in light of the Court's liberal construal of *pro se* filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

While not necessary to survive a Rule 12(b)(6) motion to dismiss, the Court further notes that Plaintiff has included a declaration signed under penalty of perjury that the facts contained in the Complaint (including the description of the date she received notice) are true and correct. (*See* Compl. 19.)

No. 17.)  However, the cases cited by the NSA in support are distinguishable because they represent situations where complainants filed civil suits less than 180 days *after* filing appeals with the EEOC.  *See Avery v. Astrue*, Civ. No. WDQ-11-2612, 2012 WL 1554646, at *3 (D. Md. Apr. 27, 2012); *Puryear v. Shrader*, Civ. No. PJM 11-3640, 2013 WL 1833262, at *2 (D. Md. Apr. 30, 2013), *aff'd*, 541 F. App'x 242 (4th Cir. 2013).  In contrast, Plaintiff filed the instant suit *before* filing her EEOC appeal in actions 11-011 and 12-004.  Therefore, while it might mean that Plaintiff's EEOC appeal was invalid,[9] her civil suit was timely filed.  For these reasons, the NSA's motion to dismiss for failure to state a claim will be denied with respect to all arguments concerning the timeliness of the Complaint's allegations arising from Agency Actions 10-006, 11-011, and 12-004.

### C. *Sufficiency of the Complaint*

The NSA proceeds to argue that Plaintiff has failed to allege a prima facie case of discrimination or of a hostile work environment, and that even if she did so, she has not demonstrated pretext in the NSA's proffered non-discriminatory explanations for its actions. (NSA's Mem. in Supp. 21–28.)  In making these arguments, the NSA focuses exclusively on the Complaint's allegations arising out of Agency Action 10-006.  (*See id.*)  However, for reasons stated above, the Court finds the instant case to encompass the Complaint's allegations arising from Agency Actions 11-011 and 12-004 as well.  Accordingly, it is in the interest of judicial efficiency that all of Plaintiff's properly-brought charges be considered simultaneously.  Given the possibility of a conflicting outcome between this suit and the ongoing administrative appeal in Agency Actions 11-011 and 12-004, the Court does not find that the interests of justice would be served if it proceeded at this time to apply the appropriate burden-shifting analysis.

---

[9] *See supra*, Part II.A.2 (*citing* 29 C.F.R. § 1614.409 (2012)).

Therefore, the Court will deny without prejudice the NSA's remaining arguments for dismissal or, in the alternative, for summary judgment.

The Court has the authority to control its own docket, including the power to stay a proceeding pending the resolution of another action. *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Pursuant to such authority, the Court will grant a stay in this case until it is informed the relevant actions pending before the EEOC have come to an end. When the stay is lifted, the NSA may renew its motion, taking into consideration the scope of the case as defined above.

## IV. CONCLUSION

For the foregoing reasons, the NSA's motion will be denied in part and denied in part without prejudice. The Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction will be denied. The Rule 12(b)(6) motion to dismiss for failure to state a claim will be denied with respect to the argument that the Complaint was untimely and will be denied without prejudice with respect to the argument that Plaintiff failed to make out a prima facie case of discrimination or hostile work environment. The alternative motion for summary judgment will also be denied without prejudice. The case will be stayed pending the conclusion of Plaintiff's appeal to the EEOC in Agency Actions 11-011 and 12-004. A separate order shall issue.

DATED this 5th day of June, 2017.

BY THE COURT:

/s/
James K. Bredar
United States District Judge